SCUDDER v. JOHNSON.

I.  A. & B. by an instrument of writing, agreed to submit the matters in difference between them to C. & D., as arbitrators. The arbitrators to have power, in case of their disagreeing, to choose a *third person or more*, if they thought proper, before they entered on their duties as arbitrators. The submission was made a rule of court. C. & D. not being able to agree upon an award, referred the whole matter to the umpirage of E. F. & G., who made the award. Held, that it was not necessary that the arbitrators first appointed, should have been sworn, or have concurred in the award by signing and sealing the same, as required by the act of submission.

2.  NAPTON, Judge, concurred in affirming the judgment of the circuit court, but thought there was much doubt and uncertainty as to the proper construction of the submission. He thought, as much from the acts of the parties themselves as from any thing in the terms of submission, that the parties intended to authorize the arbitrators to select one or more persons to act as *umpires*, though the word *arbitrators* was used,

APPEAL from the circuit court of Perry county.

*P. Cole*, counsel for appellant:

The appellant makes the following points in order to the reversal of the judgment below:

1.  The order of reference is illegal, because it gives cognizance to referees of matters not depending before the court.

2.  Report of referees is illegal, because not made by the persons appointed by the court.

3.  The above is neither an arbitration nor a reference, but a mixed proceeding unknown to the laws.

4.  Neither the report nor judgment is supported by the evidence.

5.  The entry of judgment upon the award was irregular, and the agreement of the parties does not authorize it—1 Digest, 74, sec. 26–7–8–9–30.

*Brickey*, counsel for appellee:

The appellant has made numerous points before this court, but I shall consider only the following:

1.  Could the parties refer the matters in controversy between them by their mutual voluntary agreement in writing, and under an order of court, to arbitrators for a final decision between them, and did they do so?

2.  Did the arbitrators or referees act within the limitation of their powers given, and upon the subject matter submitted?

3.  If the arbitrators acted fairly and honestly, and returned an award according to their appointment and the

MAY TERM, 1839.

Scudder
v.
Johnson.

order of the court, is it not binding and conclusive between the parties?

4. Did not the circuit court decide correctly in overruling the plaintiff's motion to set aside the award and in giving judgment for the defendant according to the award?

Authorities cited.—Rev. Code p. 71 to 74, (Arbitrators,) sec. 18; do. p. 463, sec. 15; Bac. Ab. 201, 210, 213, letter E. 226, F. 227; 1 Stark. Evi. 230; 3 Cain's Cas. 166, 254; 2 John. Rep 57, McKenstry v. Solomons; 3 Cain's Cas. 166, Shepard v. Watrous; 9 John. Rep. 212, Cranston v. Kenny; 2 John. Rep. 62, Newland v. Douglas; 2 Marsh. Rep. 566, Shryock v. Morton.

TOMPKINS, Judge, delivered the opinion of the court.

Scudder brought his action in the circuit court against Johnson. After the parties had come into court, they determined to submit to the decision of certain arbitrators, by an instrument of writing, the subject matter of the suit, together with other matters in controversy existing between them. The following is a copy of the instrument above mentioned, viz: "Be it remembered, that Thomas E. Johnson and John Scudder, both of the county of Perry, and State of Missouri, being desirous finally to end and determine divers controversies, suits and quarrels that have lately arisen between them, did, on the eighth day of January, one thousand eight hundred and thirty-eight, agree to submit it, and refer all controversies, suits and quarrels to the award and determination of William Garner of the State of Illinois, and Thomas Swan of the county of Perry and State of Missouri; and in case of their disagreeing, they shall have power to choose the third person or more, if they think proper, before they enter on their duties as arbitrators, which said award shall be made.in writing, under the hands and seals of the said arbitrators, and ready to deliver to the parties on or before the third Monday in March next; and the said parties did mutually promise and oblige themselves, that they would obey, perform and execute such award as the said arbitrators should make in the premises. Now, the said parties do further agree, that the said submission shall be made a rule in the circuit court of Perry county and State of Missouri, at the term in March next, and that they will be finally concluded by the arbitration that shall be made in the premises by the said arbitrators pursuant to such sub-

mission." This writing is signed and sealed by the parties, and this submission was made a rule of court.

Swan and Garner, the arbitrators named in the instrument of writing above mentioned, met, and having heard all the testimony of the parties, and duly considered all the matters in controversy submitted to them; and having communicated to each other their views on the various matters submitted to them, and not being able to agree upon an award, referred the whole matter to the umpirage of Jacob Shaner, Archibald Mitchell and Benjamin Davis. These persons, last appointed arbitrators, made the award. It is objected that the first arbitrators appointed, did not appear to have been sworn, or to have concurred in the award, by signing and sealing, as required by the act of submission, as above stated. It appears that they could not agree, and it might be supposed that, disagreeing themselves, they acted very honestly to appoint men who could and did agree, and to save the losing party the expense of setting out on the record the copy of the oath administered, and the attestation of the justice, as was done in the case of the three last appointed. They not having, as it seems, acted as arbitrators, I know no reason why they should have been sworn, and the counsel of the appellant have shown none. It could scarcely be expected that five men could concur in opinion about a matter as intricate as the subject matter of this arbitration appears to have been, and in such case, all that two honest men could have done, would be to acquiesce in the decision of a majority. The language of the act of submission, seems to have contemplated such a state of things. In case of their disagreeing, they are authorized to choose a third person or more, if they think proper, before they enter on their duties as arbitrators. They might have chosen one arbitrator to give the casting vote betwixt them; but believing, probably, that each of themselves was incapable, from some cause, to make up a correct opinion, they preferred choosing three persons who, being a majority of the whole number, might discharge the whole duties of the arbitration. Many exceptions were taken to the irregularity of the proceedings of these arbitrators. Amongst them, none were insisted on but that above mentioned—that the two first appointed, Swan and Garner, were not sworn; and one other, that the parties had no notice of the time and place of the meeting of the arbitrators. Both of these statements are extremely negative by the record, for it is expressly stated in the record that Swan

MAY TERM, 1839.

Scudder
v.
Johnson.

A. & B. by an instrument in writing, agreed to submit the matters in difference between them to C. & D. as arbitrators. The arbitrators to have power, in case of their disagreeing, to choose the *third* person or more, if they think proper, before they entered on their duties as arbitrators. The submission was made a rule of court. C & D. not being able to agree upon an award, referred the whole matter to the umpirage of E. F. & G., who made the award. Held, that it was not necessary that the arbitrators first appointed should have been sworn, or have concurred in the award by signing and sealing the same, as required by the act of submission.

and Garner were sworn to arbitrate and determine the matters submitted; and that it is proved in court that the parties had notice of the time and place of the meeting of the arbitrators, and that they did attend. But the losing party was very correctly spared the expense of the copies of the several oaths administered to those arbitrators, as well as that of a copy of the notice to the parties, it being unnecessary to spread out either on the record, unless an objection had been made to its sufficiency.

The whole record has been examined, notwithstanding many of the objections made before the circuit court were not insisted on here, and every thing required by law appears to have been done by the arbitrators. But the judgment of the circuit court is not drawn up in the form prescribed by law. It does not recite the submission, state the hearing before the arbitrators and their award—See 7th section of the act concerning arbitratoins, &c., page 73, of the Digest of 1835.

This court then will set aside the judgment of the circuit court, and enter up such judgment on the award of the arbitrators, as that court ought to have done, and would probably have done on a proper suggestion, in favor of the same party who obtained the judgment in that court, thereby affirming the judgment of the circuit court.

Separate opinion of Judge NAPTON.—I concur with Judge Tompkins in affirming the judgment of the circuit court, after it is amended in accordance with the direction of the act concerning arbitrations—Rev. Code of 1835, p. ——, sec. ——.

NAPTON, Judge,
concurred in af-
firming the judg-
ment of the cir-
cuit court, but
thought there was
much doubt and
uncertainty as to
the proper con-
struction of the
submission. He
thought, as much
from the acts of
the parties them-
selves as from any
thing in the terms
of submission,
that the parties
intended to au-
thorize the arbi-
trators to select
one or more per-

The only material objection urged to the validity of the award is, that the submission did not authorize the two first arbitrators to devolve the burthen of the award upon others without participating themselves in making the award. There is certainly much doubt and uncertainty as to the proper construction of the submission. It must not be construed strictly, but according to the plain meaning and intent of the parties. (See Bacon's Abr. title "Arbitration," letter b.) I have been led to the conclusion that the parties to this submission intended to authorize the arbitrators to select one or more persons to act as umpires, though the word *arbitrators* is used, as much from the act of the parties themselves, or any thing in the terms of the submission which might be strained to either interpretation. The bill of exceptions, which detail the entire proceedings before the ar-

bitrators and umpires, shows that the parties were present during the whole investigation; that they examined witnesses; presented their respective accounts and off-sets; and, in short, plainly acted under the impression that the matter was fairly before the umpire. They made no objection to the three persons selected by the two first arbitrators; they did not pretend that the arbitrators had exceeded their power in the appointment of those gentlemen. And who could be better judges of their own meaning, in the article of submission, than themselves?

It does seem to me that the acts of the parties themselves, may be fairly resorted to by this court, to determine the true intent and meaning of their agreement, where that agreement is obscure.